IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WES TERN DIVISION

BRENDAN T. LEE, etc.,

                Plaintiff,         Case No. 3:08 CV 1739

-vs-

                                      O  R  D  E  R

CHARLES R. MARLOWE, JR.,

                Defendant.

KATZ, J

The Court conducted a Daubert hearing on August 18, 2009.  Defendant's car struck a right-hand guard rail three times, and then swerved across two lanes of traffic and a median, into oncoming traffic, striking Plaintiff's decedents' vehicle. To Plaintiff's negligence claim, Defendant asserts the defense of "sudden medical emergency," as recognized under Ohio law (which governs this aspect of the case). To establish this defense, Defendant bears the burden of showing: 1) that he was suddenly stricken by a period of unconsciousness; 2) that he had no reason to anticipate, and which 3) rendered it impossible for him to control his vehicle. See *Roman v. Estate of Gotto*, 791 N.E.2d 422, 432-33, 99 Ohio St.3d 260, 272-73 (Ohio 2003).

In seeking to establish the elements of this defense, Defendant relies on the testimony of two experts, Dr. James Bingle, a cardiologist, and Dale Meyer, a "crash reconstructionist." Plaintiff has filed a motion to exclude the testimony of both of these experts under the standard set forth in *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993). This Court now grants that motion in part.[1]

---

[1] Specifically, the Court today considers only the issue of the admissibility of Dr. Bingle's testimony as to the first element of the "sudden medical emergency" defense, and not the admissibility of Meyer's testimony or the admissibility of Dr. Bingle's testimony as to the second

(continued...)

The legal standard to be used in *Daubert* challenges was set forth by Judge Bechtle in his memorandum opinion issued on February 1, 2001:

> Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589). The party offering the expert has the burden of proving admissibility. *Daubert*, 509 U.S. at 592 n.10. The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than subjective belief or speculation. *Id.* at 589-590. Further, Rule 702 requires that expert testimony assist the trier of fact, i.e., it must "fit" the issues in the case by having a "valid scientific connection to the pertinent inquiry." *Id.* at 591-92.
>
> In determining "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact," the court must assess whether the methodology underlying the testimony is scientifically valid and whether it can properly be applied to the facts in issue. *Id*. at 592-93. Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).
>
> In *Daubert*, the Court identified several factors to assist courts in evaluating whether a scientific theory or methodology constitutes reliable scientific knowledge. These include: whether the theory or technique can be or has been tested; whether the theory has been subjected to peer review and publication; whether a technique has a known or potential rate of error and whether there are standards controlling the technique's operation; and whether the theory or method has general acceptance in the scientific community. *Daubert*, 509 U.S. at 593-94. These factors "are simply useful signposts, not dispositive hurdles that a party must overcome in order to have expert testimony admitted." *Heller*, 167 F.3d at 152.
>
> In addition, a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." 4 Weinstein's Fed. Evid. § 702.06[1], at 702-52 (2000). In other words, a party cannot qualify as an expert generally by showing that the expert has specialized knowledge or training which would qualify him or her to opine on some other issue. *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1179 (4th Cir. 1997); *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 382b (5th Cir. 1996).
>
> Moreover, testimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury. *McGowan v. Cooper Indus., Inc.*, 863 F.2d 1266, 1273 (6th Cir. 1987); *STX, Inc. v. Brine, Inc.*, 37 F. Supp. 2d 740, 768 (D.Md. 1999) (quotation omitted), *aff'd*, No. 99-1540, 2000 WL

---

[1](...continued)
and third elements of the "sudden medical emergency" defense.

> 564010 (Fed. Cir. May 8, 2000); *Sec. & Exch. Comm'n v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998).
>
> Lastly, the court "should also be mindful of other applicable rules." *Daubert*, 509 U.S. at 595. Federal Rule of Evidence 703 "provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts and data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" *Id*. (quoting Fed. R. Evid. 703). Under Rule 703, "[i]f the underlying data are so lacking in probative force and reliability that no reasonable expert could base an opinion on them, an opinion which rests entirely upon them must be excluded." *In re Paoli RR. Yard PCB Litig.*, 35 F.3d [717,] 748 (quoting *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985).

*In re: Diet Drugs (Phenermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. MDL 1203, 2001 WL 454586, at *5-6 (E.D. Pa. Feb. 1, 2001) (footnotes omitted). The district court is not required to hold a hearing to address a *Daubert* issue, *see Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999), although one has been held in this case. Moreover, where a physician testifies as to his patient's illness or condition, his testimony "remains subject to the requirement set forth in [*Daubert*] that an expert's opinion testimony must 'have a reliable basis in the knowledge and experience of his discipline.'" *Gass* v. *Marriott Hotel Servs., Inc.*, 558 F.3d 419, 426 (quoting *Daubert*, 509 U.S. at 592). Even in such cases, "*Daubert* and its progeny make it clear that '[p]roposed [expert] testimony must be supported by appropriate validation.'" *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).

Dr. James Bingle is a board-certified cardiologist who has practiced for over twenty years. There is no question as to his expertise as a cardiologist and the respect he has of his partiens and peers. He is also Defendant's treating physician. He believes that a "syncopal event" (a period of sudden unconsciousness caused by a medical condition) led Defendant to fall unconscious, causing the traffic accident at issue in this case. Dr. Bingle purports to rely for this conclusion on a

3

method called "differential diagnosis," whereby an expert begins with a range of possible medical diagnoses which he narrows through a process of elimination.

In this case, the major alternative "diagnosis" to be excluded is that Defendant did not experience a syncopal event, and that the accident was caused by the same non-medical factors that ordinarily cause car accidents: inattention, distraction, fatigue, etc. When pressed at his deposition to disclose the basis of his opinion that the accident was caused by Defendant's sudden unconsciousness, as opposed to any other potential (non-medical) cause, Dr. Bingle admitted, "I can only tell you it's my opinion. I don't have medical testing or anything to base my opinion on." Deposition of Dr. James F. Bingle (hereinafter "Bingle Deposition") at 93:9-11. Instead, Dr. Bingle asserted that his opinion was based on nothing more specific than "just watching this gentleman, knowing how healthy he is, and having been involved in cases through the years" as opposed to "[anything] medically that I can say we tested and this is what it showed and that's why I think that. It's just opinion." *Id*. at 89:14-19.

It would make perfect sense to conduct a "differential diagnosis" if it were conceded that Defendant did indeed suffer a syncopal event that led to the collision. Healthy people do not normally suddenly fall unconscious, and thus a medical explanation for such an event would appear to be well in order. The problem in this case is that whether Defendant experienced a sudden period of unconsciousness is precisely the question at issue. Defendant asserts a complete lack of memory surrounding the circumstances of the accident (and asserted the same to Dr. Bingle, his treating physician), and thus it is entirely unclear as to whether Defendant suffered a syncopal event at all.

While "differential diagnosis" is certainly an effective method of eliminating alternative *medical* causes for a *medical* event, see *Best v. Lowe's Home Centers, Inc.*, 563 F.3d 171, 178 (6th Cir.2009), it is not a nostrum that can explain all aspects of human behavior. "Not every opinion that is reached via a differential diagnosis method will meet the standard of reliability required by *Daubert*." *Best*, 563 F.3d at 179. Dr. Bingle, who does not purport to be an expert in traffic accidents generally, is not qualified to opine that accidents of this sort are ordinarily caused by driver unconsciousness, as opposed to mere inattentiveness, fatigue, or drunkenness. To the extent that Dr. Bingle's testimony is based on such "expertise," it is not admissible, for a court should "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." 4 Weinstein's Fed. Evid. § 702.06 at 702-52 (2000).

But without such expertise, Dr. Bingle's apparent assumption that this traffic accident *must* have had some medical cause lacks a discernible basis. Dr. Bingle's mere assertion that his diagnosis is based on "having been involved in cases throughout the years" is not enough. As the Sixth Circuit has advised, "'conclusions based only on personal opinion and experience do not suffice' to establish the reliability or utility of expert testimony." *Brown v. Raymond Corp.*, 432 F.3d 640, 648 (6th Cir. 2005) (quoting *Dhillon v. Crown Controls Corp*, 269 F.3e 865, 870 (7th Cir. 2001)); see also see also Fed. R. Evid. 702, advisory committee's note to 2000 Amendments ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it.").

Of course, "doctors need not rule out every conceivable cause in order for their differential-diagnosis-based opinions to be admissible." *Best*, 563 F.3d 171, 181 (6th Cir. 2009) . But "the doctor must provide a reasonable explanation as to why 'he or she has concluded that [any alternative cause suggested by the defense] was not the sole cause.'" *Id*. at 179 (quoting *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 758 n. 27 (3d Cir.1994)). If there was something specific about Defendant's medical history that would render a syncopal event any more likely a cause than some non-medical factor, this would be a different case. But in his deposition, Dr. Bingle was not able to point to anything specific about Defendant's medical history, either prior to or subsequent to the accident, that would make it more likely that the accident was caused by a syncopal event as opposed to, say, cell phone usage. In fact, Dr. Bingle acknowledges that Defendant has no history of syncope, Bingle Deposition 75:5-7, and was generally in good health. *Id*. at 88:13-14. Thus, Dr. Bingle lacks any articulable basis for opining that this car accident was caused by Defendant's medical condition or sudden period of unconsciousness, as opposed to some non-medical factor, and his opinion appears to be no more than "subjective belief or unsupported speculation," *Daubert*, 509 U.S. 579, 590.

As the Supreme Court has cautioned, "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). This is such a case: Dr. Bingle has not provided a sufficient explanation for his reasoning from the bare facts of the accident and Defendant's medical history to his conclusion that Defendant suffered a syncopatic episode. Plaintiff's motion to exclude Dr. Bingle's testimony is

thus granted insofar as Dr. Bingle seeks to testify as to the first element of the "sudden medical emergency" defense; that is, that Defendant was suddenly stricken by a period of unconsciousness at the time of the accident.

    IT IS SO ORDERED.

                                           s/ *David A. Katz*
                                           DAVID A. KATZ
                                           U. S. DISTRICT JUDGE